William D. Hyslop
United States Attorney
Eastern District of Washington
Patrick J. Cashman
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| | Plaintiff, | 2:18-CR-00221-WFN-1 |
| vs. | | United States' Sentencing Memorandum |
| GERALDINE MICHELLE NEWELL, | | |
| | Defendant. | |

Plaintiff, United States of America, by and through William D. Hyslop, United States Attorney for the Eastern District of Washington, and Patrick J. Cashman, Assistant United States Attorney for the Eastern District of Washington, submits the following sentencing memorandum:

I.    Background

The Government requests an opportunity to file additional materials in response to any memorandum or factual assertions filed by the Defendant.

The Government relies on the summary of facts contained within the plea agreement. (ECF No. 40). The Government further relies on the facts contained within the United States Probation Office's ("USPO") Pre-Sentence Investigation Reports and Addendum ("PSIR"). (ECF No. 45). Additionally, the United States relies on the following facts to support arguments at sentencing.

Government's Sentencing Memorandum- 1

On December 4, 2018, the Defendant was indicted by a grand jury sitting in the Eastern District of Washington with two counts of Bank Fraud, in violation of 18 U.S.C. § 1344(2), and two counts of Filing a False Tax Return, in violation of 26 U.S.C. § 7206(1). On January 15, 2020, the Defendant entered a change of plea to Count 3, Filing a False Tax Return, in violation of 26 U.S.C. § 7206(1). Pursuant to the plea agreement, the United States agreed to dismiss at sentencing Counts 1, 2, and 4. However, by dismissing those offenses, the United States does not waive the relevance of the Defendant's conduct for those offenses as it relates to sentencing. USSG §1B1.3.

In approximately October 2014, the Defendant and the victim, Beverly Bourgeois, entered into an agreement where Ms. Bourgeois agreed to pay the Defendant $360 per day for her daily care. Ms. Bourgeois care was necessitated by the Ms. Bourgeois physical and mental condition as well as her home in Seattle, Washington needed significant renovations. Additionally, Ms. Bourgeois agreed to pay the Defendant $250 per hour for the care, clean up, salvage, and sale of her house.

Noted by investigators during the course of this investigation, were numerous checks drawn on Ms. Bourgeois' account that appeared to be fraudulent. Specifically, the Defendant, acting as the power-of-attorney (POA) for Ms. Bourgeois drafted check number 2178, dated February 17, 2015 on Ms. Bourgeois' JP Morgan Chase checking account. This check was in the amount of $38,491.71 and was paid to the order of Center4Law. Referenced in the memo section of the check was a note stating the check was reimbursement for the cost of asbestos removal. However, when investigators reviewed the invoices related to the reconstruction of Ms. Bourgeois' home the asbestos removal cost was $4,410.00 and was already factored into the total cost of the rebuild conducted by Elite Installers NW, LLC, who subcontracted with American Environmental Construction, LLC. Further review of the invoicing records revealed the Defendant paid the entire cost of the Elite Installers invoice, which

included the cost of the asbestos removal, in the amount of $32,448.18 on November 21, 2014 using Ms. Bourgeois' JP Morgan Chase account.

Additionally, the Defendant drafted check number 2183, dated October 1, 2015, from Ms. Bourgeois' JP Morgan Chase account in the amount of $22,500.  Again this check was paid to the order of Center4Law for the purpose of payment for the Deposit for Designs.  Investigators determined that Atelier Drome was an architecture firm hired to draft designs for the remodel of Ms. Bourgeois' home.  Invoicing from Atelier Drome reflected a cost of $15,561, which was paid directly from Ms. Bourgeois' JP Morgan Chase account through multiple payments on December 2014 and September 2015.

## II.    Base Offense Level and Enhancements

The Government agrees that the base offense level for Filing a False Tax Return, pursuant to 26 U.S.C. § 7206(1), is 18. *See* USSG §2T1.1(a)(1). The United States further agrees the Defendant failed to report or correctly identify the source of income exceeding $10,000 in any year from criminal activity results in a two-level increase.  *See* USSG §2T1.1(b)(1).  The evidence supporting this increase relates to check numbers 2178 and 2183, wherein the Defendant derived income from Ms. Bourgeois' account through fraud and the use of her position as a POA.  *See* USSG §1B1.3(a)(1)(A).

The United States further agrees the vulnerable victim enhancement applies because of the nature of Ms. Bourgeois physical and mental conditions.  *See* USSG §3A1.1; *see also* USSG §1B1.3.

The United States submits that an additional two-level increase applies because the Defendant abused her position of trust as a POA to facilitate the commission of the offense.  *See* USSG §3B1.3.  The United States disagrees with the Defendant's analysis of the application of this adjustment.  The United States does not maintain the position the Defendant used her "special skill" as an attorney to facilitate the offense. Rather, the United States argues the Defendant through her position as a POA, a

Government's Sentencing Memorandum- 3

position of trust, embezzled money from Ms. Bourgeois' account to the account of Center4Law. This resulted in income for Center4Law that was not properly reported in the Defendant's tax return. But for the Defendant's position as the POA, she would not have been able to unjustly enrich Center4Law and herself. As noted by the USSG, adjustments in Chapter Three "shall be determined on the basis of…all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." *See* USSG §1B1.3 (Relevant Conduct). The nature and means by which the Defendant obtained the funds from Ms. Bourgeois is directly relevant to the commission of this offense. Accordingly, when considering the relevant conduct, an abuse of a position of trust adjustment should apply.

The Government agrees that the offense level should be decreased by 3 levels for the Defendant's timely acceptance of responsibility.

The Defendant therefore has a total adjusted offense level of 21. The Criminal History Category as calculated by the USPO, which the United States agrees, is I. Therefore, the Government calculates the Defendant has an advisory guideline sentencing range of thirty-six (36) months, limited by the statutory maximum term of imprisonment for violations of 26 U.S.C. §7206(1). Accordingly, the Government recommends a sentence of 36 months, followed by an agreed to one (1) year term of supervised release.

## III.    Departures

The Government does not seek an upward departure from the Advisory Guideline range.

The Government intends to object to any requested departure or variance offered by the Defendant.

## IV.    18 U.S.C. § 3553(a) Factors

The Government respectfully submits that a total term of 36 months incarceration, followed by a 1-year term of supervised release, would be a "reasonable" sentence under the facts and circumstances of this case and would not be

greater than necessary to promote the purpose and policy of the Federal Sentencing Act, 18 U.S.C. § 3553(a).

### a. A Sentence of 36 months accurately reflects the nature and circumstances.

While this offense does not involve physical harm to individuals, the Defendant's actions involved the taking of money from Ms. Bourgeois and failing to accurately report that taking on the Defendant's tax returns.  By using her position as a POA, the Defendant exploited her access to Ms. Bourgeois' financial accounts to her benefit.  She placed herself in a position in which she was able to purchase both real and personal property.  She placed herself in a position to leave the practice of law and start a new business. She placed herself in a position where she shared the things purchased and the trips taken with her family and provided for her adult children.[1] This was possible because of the Defendant's position of trust she maintained over Ms. Bourgeois' finances.

While the Defendant takes the position that she did not unlawfully obtain money from Ms. Bourgeois' accounts, the facts reveal otherwise.  The Defendant purportedly wrote checks to Center4Law for reimbursement of the costs associated with asbestos removal and the design of Ms. Bourgeois' home.  Yet a closer inspection of the invoices and Ms. Bourgeois' checking account reveals that those expenses had already been paid from Ms. Bourgeois' account.  Therefore, there would be no need for reimbursement to the Defendant.

The Defendant argues that the amounts in these two checks relate to the "time expended on that issue."  ECF No. 46, pg. 5, ln. 2.  The United States strongly disagrees with this argument.  Assuming *arguendo* that the checks were written for reimbursement of time and not costs pertaining to the remodel, at a rate of $250 per hour, the Defendant would have spent approximately 220 hours (5.5 weeks at 40

---

[1] The United States notes that Ms. Bourgeois would travel with the Defendant as well.

hours per week) communicating with contractors responsible for the asbestos abatement and the design of the new home. This is utterly unreasonable and inconsistent with the facts of this case. The nature of the Defendant's exploitation in this case warrants a sentence at the low-end of the advisory guideline, which the United States calculates as 36 months.

       b. *A sentence of 36 months appropriately captures the characteristics and criminal history of the Defendant.*

The Defendant is a Criminal History Category I. The Defendant has no criminal history. However, the Court is not presented with an individual of limited means or education. The Defendant holds a law degree from Gonzaga University and has been engaged in the practice of law since October 1999. Notably in approximately 2016, the Defendant left the practice of law to open a new food-service business Crack of Dawn, LLC. The Defendant is of sophisticated means and is well equipped to know her roles and responsibilities as a POA and her obligations to accurately report her income to the Internal Revenue Service (IRS).

       c. *A sentence of 36 months reflects the seriousness of the offense, promotes respect for the law, and provides adequate punishment.*

Including relevant conduct, both the United States and Ms. Bourgeois have suffered significant harm. Specifically, the United States has been harmed due to the loss of tax revenue in the amount of $264,909 owed. Furthermore, the Defendant fraudulently procured funds from Ms. Bourgeois' accounts of at least over $50,000.

A sentence of 36 months is appropriate to promote respect for the law. A sentence of 36 months would represent a significant sentence to the Defendant who has not previously served a prison sentence.

In drafting the Sentencing Guidelines, the Commission included a background statement with respect to USSG §2T1.1, which states: "Tax offenses, in and of themselves, are serious offenses; however, a greater tax loss is obviously more harmful to the treasury and more serious than a small one with otherwise similar

characteristics.  Furthermore, as the potential benefit from the offense increases, the sanction necessary to deter also increases."  USSG §2T1.1 cmt. background (2018). As reflected in the Sentencing Commission's statement, with a higher tax loss, the sentence imposed must be greater in order to achieve an appropriate deterrent effect. The large tax loss caused by Defendant's repeated intentional and willful decisions is another reason the Court should impose a guideline sentence of 36 months incarceration.

> d.  *A sentence of 36 months is necessary to deter the defendant and others from criminal conduct, and the need to protect the public from future crimes of the defendant.*

A primary goal of sentencing is to provide deterrence, in order that others will be less likely to commit tax crimes.  This case presents the Court with an opportunity to deter the general public and the Defendant from committing tax fraud.  General deterrence is one of the prescribed goals of every sentencing, but it occupies an especially important role in sentencing for criminal tax offenses, because criminal tax prosecutions are relatively rare:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system.  Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws.  Because of the limited number of criminal tax prosecutions relative to the estimate incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines.  Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

*United States v. Engle*, 592 F.3d 495, 501-02 (4th Cir. 2010) (*quoting* USSG Pt. T, introductory cmt. (1998)). "The policy statements likewise make it clear that the Commission believes that there must be a real risk of actual incarceration for the Guidelines to have a significant deterrent effect in tax evasion cases." *Engle*, 592 F.3d, at 502.  Moreover, general deterrence depends upon the public seeing some

consequence for criminal conduct.  Thus, taxpayers who exploit their positions of trust and willfully evade their income tax obligations must realize that such behavior carries with it a correspondingly serious punishment.  Here, a guideline sentence of 36 months can act as a general deterrent to others who might consider engaging in similar criminal conduct.

Deterrence is particularly crucial in a case such as this where the Defendant, an lawyer, savvy in the law and business, willfully violated the tax laws by concealing her procured income, both legitimate and fraudulent.[2]  "Defendants in white collar [cases] often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006).  It is this type of mentality that is most amenable to deterrence.

Absent such deterrence, other successful Americans with the means and opportunity to enrich themselves at the cost of other taxpayers, will cynically conclude that the potential rewards of such criminal activity outweigh the risks of being caught and punished for committing tax fraud.  *See United States v. Ture*, 450 F.3d 352, 358 (8th Cir. 2006) ("The goal of deterrence rings hollow if a prison sentence is not imposed.").  The sentence imposed in this case should send a strong message to other would-be tax violators that imprisonment is a reality for those who willfully violate the internal revenue laws.  The sentence should also assure law-

---

[2] *See, e.g.*, *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crime are prime candidates for general deterrence." (internal quotation marks and alteration omitted)); *United States v. Hauptman*, 111 F.3d 48, 52 (7th Cir. 1997) ("[White collar] crime is not as feared as violent crime or drug offenses, but like the latter it requires heavy sentences to deter because it is potentially very lucrative.").

Government's Sentencing Memorandum- 8

abiding taxpayers that they are not credulous rubes for filing tax returns and paying their share of taxes.  In short, our nation's tax system depends on the voluntary compliance of honest taxpayers.  Here, a sentence of imprisonment promotes voluntary compliance by making clear that there are consequences for hiding income from the government.  The recommended guideline sentence will certainly deter others and send a message that cheating on your taxes bears very serious consequences, and simply will not be tolerated.

Another important goal is to protect the public "from further crimes of the defendant."  18 U.S.C. § 3553(a)(2).  As articulated in the dissenting opinion of Circuit Judges Gould, Bybee, Callahan and Bee:

> It doesn't take a crystal ball to see that those occasional dishonest persons in the business community may make a slide-rule calculation that they can steal hundreds of thousands of dollars, maybe even millions, because if caught they see a good chance that they can walk away with expressed contrition and probation. That is the result the Sentencing Guidelines have long worked to prevent. *See* U.S.S.G. Ch. 1, Pt. A.4(d) (2009) ("Under pre-guidelines sentencing practice, courts sentenced to probation an inappropriately high percentage of offenders guilty of certain economic crimes, such as theft, tax evasion, antitrust offenses, insider trading, fraud, and embezzlement . . . .")

*United States v. Edwards*, 622 F.3d 1215, 1218 (9th Cir. 2010) (Gould, J., dissenting).

A sentence of 36 months will send a clear message to the Defendant that future violations will not be tolerated.  As a lawyer, the Defendant is expected to abide by the highest standards of integrity and ethics.  The Defendant deviated significantly from the oath she took as a lawyer.  A sentence of 36 months is an appropriate sentence that reflects the gravity of her offense and the significant breach of trust caused by the Defendant.

Government's Sentencing Memorandum- 9

*e. Need to provide educational or vocational training, medical care or other correctional treatment*

The Defendant hold a law degree and has previously practiced law since October 1999. It appears the Defendant may have a gambling issue, which the Defendant explicitly denies, and potential mental health issues that could be adequately addressed through the Bureau of Prisons and the United States Probation Office.

## V.    Restitution

Restitution serves the purpose of making a victim whole by restoring to the victim the value of the losses suffered as a result of the defendant's crimes. *See United States v. Newman*, 659 F.3d 1235, 1241 (9th Cir. 2011). The Government recommends the total amount of restitution to be ordered in this case is $264,909 payable to the IRS.

## VI.    Conclusion

The United States relies upon the honesty of taxpayers to fund its functions. The Defendant made a deliberate choice to commit fraud and take advantage of the federal tax system. She undermined the U.S. tax authorities and failed to pay $264,909 in taxes due. These are serious crimes that deserve a serious sentence. For the aforementioned reasons, the United States respectfully recommends that this Court sentence the Defendant to a term of 36 months (the low-end of the applicable Sentencing Guideline range as calculated by the United States), a one-year term of court supervision, a mandatory fee assessment of $100, and restitution payable to the IRS in the amount of $264,909.

//

//

//

//

//

Government's Sentencing Memorandum- 10

A sentence of 36 months is appropriate in this case and consistent with the U.S. Sentencing Guidelines and the factors enumerated in 18 U.S.C. § 3553(a).

DATED:  May 20, 2020.

William D. Hyslop
United States Attorney

*s/ Patrick J. Cashman*
Patrick J. Cashman
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following, and/or I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant(s):

Roger Peven:  rjpeven@gmail.com

*s/ Patrick J. Cashman*
Patrick J. Cashman
Assistant United States Attorney

Government's Sentencing Memorandum- 12